

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. AP-77,046

---

**HENRY WATKINS SKINNER, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON DIRECT APPEAL FROM CAUSE NO. 5216
### FROM THE 31ST JUDICIAL DISTRICT COURT
### GRAY COUNTY

---

*Per curiam.*

### O R D E R

Appellant was convicted of capital murder and sentenced to death for killing his girlfriend and her two sons in the home that they shared. On direct appeal, his conviction was affirmed. *Skinner v. State*, 956 S.W.2d 532 (Tex. Crim. App. 1997). Subsequent to his conviction, DNA testing was conducted pursuant to Chapter 64, and the trial court found that the test results were not favorable to Appellant.[1] Appellant appealed that

---

[1]Unless otherwise indicated, all future references to articles or chapters refer to the Texas Code of Criminal Procedure.

finding and asked us to decide whether it is reasonably probable that, had the test results been available at trial, he would not have been convicted.

However, in February 2016, Appellant advised this Court that he had received notices from multiple entities informing him that the DNA results reported in his case may be incorrect because of errors identified in the statistical databases relied on by the Texas Department of Public Safety (DPS) and by the manner in which DPS analyzed the DNA mixtures. Attached to the advisory was a June 30, 2015 notice Appellant received from DPS, in which the Deputy Assistant Director of DPS's Crime Laboratory Service stated that, if a request was received in writing, "the Texas DPS Crime Laboratory System will recalculate and report statistics previously reported in individual cases."

Upon receiving this notice, Appellant "promptly notified the Attorney General's Office that he was requesting the review and revision offered by DPS's notice and was informed that the Attorney General's Office had itself already made that request." After months passed without receiving the requested revision, Appellant directly asked DPS to review its work in the case, correct any errors, and provide him with the results and any other materials necessary to evaluate DPS's review.

On March 9, 2016, in light of Appellant's advisory and the nature of the issue, this Court determined that further fact-finding and analysis by the trial court was in order, and it abated the appeal and remanded the case to the trial court. We instructed the court on

remand to (1) ensure that the recalculation is performed in a timely manner[2] and delivered to the parties and the court, and (2) make any further findings and conclusions necessary upon receiving the results of the recalculation. We instructed the trial court to resolve the issue within 90 days of the date of the order, making the deadline June 7, 2016. The record of the proceedings on remand was then to be immediately sent to this Court for the reinstatement of the appeal.

On May 23, 2016, the parties filed a joint motion to extend the time set by this Court. In the motion, the parties explain that, shortly after the case was remanded to the trial court for further fact-finding, DPS "implemented a new forensic software program to perform interpretive calculations for DNA test results – STRmix." The parties further explain that "[t]raining and certification of analysts for STRmix is ongoing and varies dependent on a number of factors." However, the parties also note in the motion that the Lubbock DPS laboratory "began issuing reports utilizing STRmix calculation results on or about March 28, 2016." The parties explain that the analyst who conducted the present testing "has been trained and certified to STRmix for Short Tandem Repeat (STR) Polymerase Chain Reaction (PCR) test results, which represent the bulk of the testing utilized here (approximately 95% of the test results)." And, they state, that analyst expects to have a report with the new calculations done within the 90-day time period ordered by

---

[2]Article 64.03(c) provides that a court may order forensic DNA testing to be conducted by "(1) the Department of Public Safety; (2) a laboratory operating under a contract with the department; or (3) on the request of the convicted person, another laboratory if that laboratory is accredited under Article 38.01." This provision should also apply to the recalculation.

this Court.

However, the parties further assert, five of the DNA tests utilized a MiniFiler amplification kit, "the results of which cannot yet be processed by DPS through STRmix." They claim that that inability will change in the next "six to nine months when training and certification for processing MiniFiler results via STRmix will take place." The parties also assert that the data generated by the Lubbock DPS laboratory cannot be provided to another laboratory for recalculation because the "probabilistic genotyping software–like STRmix–is laboratory specific." Thus, the parties ask for a *minimum* of 180 days to complete the 5% of testing that the Lubbock laboratory cannot currently conduct.

In light of the parties' assertions, we have determined that additional fact-finding is warranted before we rule on the parties' joint motion for an extension of time. Therefore, the trial court is instructed to (1) determine whether the bulk of the recalculations have been completed by the previously imposed deadline as the parties stated in their motion would be done, (2) determine what other DPS laboratories in Texas or laboratories under contract with DPS can process DNA tests which utilized a MiniFiler amplification kit, (3) determine if any of those other laboratories can process the tests at issue here within a reasonable time frame, and (4) if they cannot timely process the tests, why they cannot timely process the tests. The trial court is instructed to resolve these issues within 30 days of the date of this order, after which the record of the proceedings will be immediately sent to this Court. No extensions of this time period will be entertained.

IT IS SO ORDERED THIS THE 8th DAY OF JUNE, 2016.

Do Not Publish